**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF THE** | ) | |
| **EXTRADITION OF MAREK BLACHA** | ) | **No. 22 CR 251** |
| | ) | |
| | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| | ) | **June 14, 2023** |

**AMENDED MEMORANDUM OPINION and ORDER**[1]

The Republic of Poland seeks the extradition of Marek Blacha pursuant to the "Extradition Treaty Between the United States of America and the Republic of Poland," U.S.-Pol., July 10, 1996, S. TREATY DOC. NO. 105-14 (1997), and the "Agreement between the United States of America and the Republic of Poland on the application of the Extradition Treaty between the United States of America and the Republic of Poland signed 10 July 1996," U.S.-Pol., June 9, 2006, S. TREATY DOC. NO. 109-14 (2006) (together, "the Extradition Treaty"). Under the Extradition Treaty, the United States and Poland agreed "to extradite to each other, pursuant to

---

[1] On April 26, 2023, the court issued a memorandum opinion and order certifying Blacha's extradition to the United States Secretary of State based on its findings that all certification requirements had been satisfied as to Count I (participation in organized crime group). (R. 40.) The court rendered the same findings as to Count II (import duty fraud), except that it could not trace a path of reasoning between the documents submitted and the government's argument that the statute of limitations had not expired as to that charge. (Id. at 18-20.) Thereafter, the government moved to amend the order to clarify the charges certified for extradition. (R. 41, Govt.'s Mot. to Amend.) In its motion the government further explained its statute of limitations argument as to Count II and noted an error in the English translation of a Polish statute submitted to the court, as well as an incorrect statement in the government's opening brief. (Id. at 3-6 & nn.2-4.) In light of the government's correction, the court amends its prior opinion and order to certify extradition on both Counts I and II.

the provisions of this Treaty, persons whom the authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense." (R. 1, Crim. Compl. at 16.)

Poland seeks to prosecute Blacha for two crimes: (1) participation in an organized crime group, in violation of the Criminal Code of Poland ("Count I"); and (2) import duty fraud, in violation of the Fiscal Penal Code of Poland ("Count II"). (Id. at 1-3; R. 13, Govt.'s Mem. at 10-13.) Blacha opposes extradition on grounds that neither Poland nor the United States has shown that the crimes charged are punishable by a maximum sentence of one year or more, rendering the "dual criminality" requirement unsatisfied, and the applicable statutes of limitations for prosecution have expired. (R. 16, Blacha's Resp. at 4-7.) In a supplemental response, Blacha further argues that probable cause is lacking, and the "extradition request was politically motivated." (R. 29, Blacha's Supp. Resp. at 4-11.) Based on the evidence and arguments presented, the court grants the government's petition and certifies Blacha's extradition to the United States Secretary of State on Counts I and II:

## Procedural Background

On May 2, 2022, the United States filed a complaint and supporting documents in furtherance of Blacha's extradition under 18 U.S.C. § 3184. (R. 1, Crim. Compl.) The court in response issued a warrant for Blacha's arrest. (R. 5, Arrest Warrant.) Blacha self-surrendered and made his initial appearance on June 13, 2022. (R. 8.) The court then ordered his detention pending further action. (R. 12.) The parties

briefed the issues related to the government's extradition request, and a hearing was held on April 3, 2023.[2]

## Background

Polish authorities submitted certified documents from the circuit prosecutor in Siedlce, Poland, supporting allegations against Blacha for participating in an organized crime group and engaging in import duty fraud. (R. 1, Crim. Compl.) The documents submitted include the following: (1) abstracts of "export invoices, sales invoices, export declarations, and customs clearance documents"; (2) summaries of statements from "at least five other participants" in the crimes charged; and (3) a decision by the district court in Siedlce describing the alleged crimes, evidence, and reasons Blacha "likely . . . committed" the acts of which he was accused. (Id. at 4-6, 62-74.) Polish authorities allege the evidence shows that between July 2009 and April 2010, Blacha and other participants engaged in a criminal scheme to make it appear as though they were transporting hundreds of thousands of kilograms of fresh garlic imported from China, through Poland, and then to Ukraine—when in fact they kept and sold the imported garlic in Poland—to avoid paying Polish customs duties and taxes, depriving the Polish government of about 2,352,385 Polish zloty, or $526,757 USD.[3] (Id. at 3, 62-68; see also R. 13, Govt.'s Mem. at 3, 16.) As part of that alleged

---

[2] The hearing was initially scheduled for September 7, 2022, (R. 19), but the court granted Blacha's motion to continue the hearing, (R. 22, Mot. to Continue; R. 23), and thereafter rescheduled the hearing for April 3, 2023, (R. 28).

[3] The extradition request indicates that "Polish law imposed customs duties and taxes on garlic that was shipped into and remained in Poland for legitimate sale, but garlic that only transited through Poland en route to another country was excluded

scheme, Blacha and his accomplices falsely claimed on Polish customs declarations that large quantities of imported garlic were exported to Ukraine, but instead the garlic was removed from a Polish customs warehouse and sold in Poland.  (R. 33, Govt.'s Supp. Reply at 6.)

## Legal Framework

The extradition process set out in 18 U.S.C. §§ 3184-3195 "begins when a foreign government makes a formal request to the United States government through diplomatic channels."  *Venckiene v. United States*, 929 F.3d 843, 848 (7th Cir. 2019). The United States Department of Justice then files a criminal complaint seeking an arrest warrant for the named defendant.  *Id.* at 848-49.  Afterward, "[t]he person targeted by the request is entitled to a hearing before a judge."  *Id.* at 849 (citing 18 U.S.C. § 3184).

The extradition hearing is not subject to the Federal Rules of Evidence or Criminal Procedure, and "the person whose extradition is sought is not entitled to a full trial."  *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981).  Rather, "[t]he probable cause standard appli[es]," meaning that the judge must decide "whether there is competent evidence to justify holding the accused to await trial, and not . . . whether the evidence is sufficient to justify a conviction."  *Noeller v. Wojdylo*, 922 F.3d 797, 803 (7th Cir. 2019) (quotations and citations omitted).  As such, "[a]n accused in an

_____

from Polish customs duty and tax liability."  (R. 1, Crim. Compl. at 4.)  "During the time in question, Poland held inbound shipments of garlic under the supervision of Polish customs authorities to ensure proper tracking of shipments and compliance with payment of required duties and taxes."  (Id.)

extradition hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof." *Id.* at 804 (quotations and citations omitted). "Ultimately, the relevant determination is confined to whether a prima facie case of guilt exists that is sufficient to make it proper to hold the extraditee for trial." *See In re Extradition of Lebiedziński*, No. 20 CR 842, 2021 WL 5232735, at *5 (N.D. Ill. Nov. 10, 2021) (internal quotations and citations omitted).

At an extradition hearing, the court determines narrow issues—"whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Venckiene*, 929 F.3d at 849 (internal quotations and citations omitted). If the court finds in the affirmative on each issue, it "*must* certify the extradition to the Secretary of State." *Id.* (emphasis in original); *see also Noeller*, 922 F.3d at 803 (finding that extradition treaty "should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them") (quotations and citation omitted).

If the court concludes that the extradition requirements have been met, it certifies extradition to the United States Secretary of State. 18 U.S.C. § 3184. Thereafter, "[t]he Secretary of State has 'sole discretion to determine whether or not extradition should proceed further with the issuance of a warrant of surrender,'" *Venckiene*, 929 F.3d at 849 (quotations and citations omitted), and may weigh any

defenses touching on international relations, such as political motivations or humanitarian concerns, *Noeller*, 922 F.3d at 808.

## Analysis

As an initial matter, Blacha does not challenge the court's jurisdiction to conduct these extradition proceedings. Nor could he given that 18 U.S.C. § 3184 authorizes judicial officers, including magistrate judges, to consider extradition petitions. *See Lebiedziński*, 2021 WL 5232735, at *2. Furthermore, Blacha was found and is now in federal custody within this district, giving this court the necessary personal jurisdiction to determine whether he is subject to extradition. *See id.*

Blacha does contest the government's certification petition, however, arguing: (1) the crimes charged are not covered by the Extradition Treaty and, as such, dual criminality is lacking; (2) probable cause does not exist; (3) Poland's extradition request is politically motivated; and (4) statutes of limitations bar Poland's prosecution. (R. 16, Blacha's Resp.; R. 29, Blacha's Supp. Resp.) Although Blacha limits his challenge to these issues, the court must ensure that the government has satisfied all certification requirements for extradition. *See Lebiedziński*, 2021 WL 5232735, at *1. Having considered the Extradition Treaty, evidence the Polish government has transmitted, and the parties' arguments both in court filings and at the hearing, the court concludes that each certification factor is met for Counts I and II.

### A. Valid Treaty

The government submitted a declaration from an attorney advisor in the Office of the Legal Adviser for the Department of State attesting that the Extradition Treaty is in full force and effect between the United States and the Republic of Poland. (R. 1, Crim. Compl. at 8-9 (Decl. of Michael Jacobsohn).) Blacha does not contest this evidence. (R. 16, Blacha's Resp. at 2-3.) The court finds that the declaration sufficiently demonstrates that a valid extradition treaty exists between the United States and Poland.

### B. Dual Criminality

Blacha disputes the dual criminality factor, arguing that the crimes for which he is wanted in Poland are not covered by the Extradition Treaty. Extradition may be appropriate where a sworn complaint charges the fugitive "with a crime provided for in the applicable extradition treaty." *In re Rodriguez Ortiz*, 444 F. Supp. 2d 876, 882-83 (N.D. Ill. 2006); *see also* 18 U.S.C. § 3184. Article 2, Section 1 of the Extradition Treaty makes clear that an offense is extraditable "if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty." (R. 1, Govt.'s Crim. Compl. at 16.) Article 2, Section 3(a) states that a qualifying offense is extraditable "whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology." (Id.)

The government has satisfied the dual criminality requirement here. On December 11, 2018, the Polish prosecutor issued a request seeking the pretrial

detention and extradition of Blacha for participating in an organized crime group (Count I) and engaging in import duty fraud (Count II). (R. 1, Crim. Compl. at 2, 10, 29, 32-87.) The Ministry of Justice of Poland submitted additional information supporting the request, including excerpts from the Polish criminal and fiscal penal codes describing the offenses and penalties for which Blacha is sought. (Id. at 89-104.) For Count I, Blacha is wanted under Article 258, Section 1, and in relation to Article 65, Section 1 of the Criminal Code of Poland. (Id. at 2.) As for Count II, Blacha is wanted under Article 87, Section 2, and in relation to Article 90, Sections 1-2, Article 6, Section 2, Article 7, Section 1, and Article 37, Section 1, items 1, 2 and 5 of the Fiscal Penal Code of Poland. (Id. at 2-3.) Count I carries a penalty of imprisonment for up to five years but Count II does not specify a maximum period of imprisonment. (Id. at 67, 84-85; R. 41, Govt.'s Mot. to Amend at 4 & nn.2-3.)

With respect to Count I, the government asserts that the charge of conspiracy in the United States serves as a parallel charge to Poland's organized crime group offense. (R. 13, Govt.'s Mem. at 11.) The applicable United States statute, 18 U.S.C. § 371, criminalizes any conspiracy by two or more persons "to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose," so long as "one or more of such persons do any act to effect the object of the conspiracy." Such conduct is punishable by a maximum term of five years of imprisonment. 18 U.S.C. § 371.

As for Count II, the government contends that the import duty fraud charge aligns with smuggling goods into the United States, which 18 U.S.C. § 545 defines as:

8

> Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or
>
> Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

(R. 13, Govt.'s Mem. at 12.)  The smuggling goods offense carries a penalty of imprisonment of up to 20 years.  18 U.S.C. § 545.  Accordingly, the court finds that the government has established the dual criminality requirement here.

Blacha attempts to cast doubt on the government's proof, arguing that neither Poland nor the United States "has produced any evidence or documentation that a similar offense in the United States is punishable by a maximum sentence o[f] more than one year, as required by Article 2, Section 1 of the Treaty."  (R. 16, Blacha's Resp. at 4.)  To support his argument, Blacha points to an absence of criminal convictions in the United States for the offense of smuggling garlic—and contends the reason is because smuggling garlic carries only civil, not criminal—penalties in the United States.  (R. 29, Blacha's Supp. Resp. at 2-3.)  Blacha represents that his Polish attorney discussed this matter with the Polish prosecutor, and the latter stated that "it was not clear to him that the United States would surrender" Blacha because the crime charged relates to smuggling garlic.  (Id. at 3.)

Blacha's challenge fails because Poland charged him with participation in an organized crime group and import duty fraud, and the parallel charges in the United

States—for conspiracy to commit an offense against or defraud the United States and smuggling goods into the United States—both carry criminal penalties of more than one year in prison as explained. *See* 18 U.S.C. §§ 371, 545. It matters not whether the exact same criminal statutes—or offenses based on the exact same facts—exist in both countries. (R. 33, Govt.'s Supp. Reply at 4.) To be sure, "the acts of the accused are considered criminal in both nations, [and] extradition follows even if the requesting country does not have a criminal statute analogous to the one that makes the acts criminal in the United States." *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1113 (7th Cir. 1997); *see also* Article 2, Section (3)(a) of Extradition Treaty. Anecdotal evidence regarding discussions with the Polish prosecutor is not sufficient to undermine the government's proof. *See Lebiedziński*, 2021 WL 5232735, at *5 (stating that "relevant determination" centers on "whether a prima facie case of guilt exists").

In a final effort to dispute the government's showing of dual criminality, Blacha suggests that two of his alleged conspirators, Witold Szpindor and Daniel Czop, received fines, rather than terms of imprisonment, for their roles in the conspiracy—and that Blacha already has been paying fines for the same "lost import duties and tax revenues in this case." (R. 29, Blacha's Supp. Resp. at 3.) On the first point, the punishment imposed on Blacha's alleged conspirators is not relevant to the certification of extradition. (See R. 33, Govt.'s Supp. Reply at 6.) As to the second, the court appreciates the apparent unfairness in Blacha having made substantial payments without "indication or notice" that he "would face any criminal charges for

the same debt." (Id.) But as the government points out, these arguments "are not matters for judicial consideration, but instead may properly be considered by the Secretary of State." (Id. at 2.) To be sure, the Seventh Circuit has instructed that in extradition cases, courts must "refrain from investigating the fairness of a requesting nation's justice system, and from inquiring into the procedures or treatment which await a surrendered fugitive in the requesting country." *Noeller*, 922 F.3d at 808 (internal quotations and citations omitted). Accordingly, this argument also fails.

## C.    Probable Cause

Blacha next argues that probable cause is lacking to support certification of extradition. (R. 29, Blacha's Supp. Resp. at 4-6.) The probable cause standard requires the court to "make a practical, common sense decision whether, given all the circumstances . . . there is a fair probability that the defendant committed the crime." *See In re Extradition of Jarosz*, 800 F. Supp. 2d 935, 941 (N.D. Ill. 2011) (internal quotation and citation omitted). In the extradition context, "probable cause will be found where there is evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *In re Extradition of Cruz*, No. 16 CR 283, 2016 WL 6248184, at *3 (N.D. Ill. Oct. 26, 2016) (internal quotation and citation omitted).

Because an extradition proceeding is not a trial and the Federal Rules of Evidence do not apply, hearsay evidence can be used to support a probable cause finding. *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993). The court may rely on accomplice testimony to support a probable cause finding, and because issues

11

of credibility are to be determined at trial, the defendant in an extradition proceeding is not entitled to challenge the credibility of accomplice statements submitted by the requesting country. *Id.*; *see also Eain*, 641 F.2d at 510 (noting that accomplice "evidence may be of particular importance in extradition cases where all the alleged criminal activity occurred in a distant country"). Although the defendant may introduce evidence that explains or clarifies the requesting country's evidence, he is not entitled to introduce evidence that conflicts with it. *See Collins v. Loisel*, 259 U.S. 309, 315-17 (1922); *Eain*, 641 F.2d at 511. In short, "the defendant's right to challenge the evidence introduced against him is quite limited." *Rodriguez Ortiz*, 444 F. Supp. 2d at 884. That said, in relying on affidavits or accomplice testimony in an extradition proceeding, the court must ensure that the evidence has sufficient indicia of reliability to support probable cause. *Id.*

After reviewing the documents provided by Poland and considering the parties' written and oral arguments, the court concludes that the government's evidence is sufficient to support a finding of probable cause. As discussed, Poland's request for Blacha's extradition includes certified documents from the Polish prosecutor, citing export and sales invoices, export declarations, road consignment notes, and customs clearance documents. That documentary evidence reveals that Blacha and his accomplices conspired to import garlic into Poland, marked it for transport to Ukraine, but then removed it from a Polish customs warehouse to sell it in Poland without payment of Polish customs duties and taxes. (R. 1, Crim. Compl. at 62-83.)

In addition to this documentary evidence, the Polish prosecutor cited statements from accomplices and witnesses in the crimes charged. (Id. at 4-6, 62-68.) One witness, Krysztof Piotr Jakubik, described Blacha's role in the allegedly fraudulent scheme, asserting that Blacha was responsible for determining "the price to be paid for the [imported garlic]" and that the scheme involved bribing customs officers "[t]o make transactions appear legitimate." (Id. at 63-64.) A second witness, Witold Szpindor, admitted involvement in the crimes allegedly committed by Blacha and represented that Blacha asked him for a loan to purchase imported garlic without invoices recording the transaction so that it could be sold in Poland. (Id. at 64.) A third witness, Blacha's brother Andrzej Blacha ("Andrzej"), stated that Blacha and Szpindor acted in concert to commit the charged offenses and that garlic originating from China was marked to be delivered to Ukraine but in fact was sold in Poland. (Id. at 64-65.) A fourth witness, Daniel Czop, admitted that he helped Blacha and Andrzej transport garlic in two transactions concerning the "fictitious export of garlic to Ukraine," and that after delivering the garlic he gave the money he received to Blacha. (Id. at 65.) A fifth witness, Tarek Orfali, said he transported garlic from a Polish customs agency, from which it was supposed to be transported to Ukraine, to other locations in Poland. (Id.) Orfali also said that Blacha confirmed Polish customs officials were bribed as part of the scheme. (Id.)

Together, this documentary and testimonial evidence is sufficient to support a probable cause finding in the extradition context that from July 2009 to April 2010 Blacha engaged in a scheme with others to mark imported garlic for transport to

13

Ukraine but then diverted and sold the garlic in Poland, depriving Poland of customs duties and taxes for the imported garlic. *See Bovio*, 989 F.2d at 259. To be sure, after considering the evidence gathered by Polish authorities, Polish district court Judge Joanna Wardak concluded that Blacha "is very likely to have committed the act that he is accused of." (R. 1, Crim. Compl. at 73.) The judge based her opinion not only on accomplice and witness statements but also on documents seized at Blacha's company, which he owned and operated with his brother Andrzej, and records from Polish and Ukrainian customs agencies confirming the alleged fraud. (Id. at 69-74.)

In his initial response, Blacha does not attack the evidence in support of probable cause on Counts I and II but rather challenges Poland's alleged failure to describe the essential elements of the offenses for which Poland requests extradition. (R. 16, Blacha's Resp. at 7.) For support, Blacha cites Article 9, Section 2 of the Extradition Treaty, which requires an extradition request to set forth "the text of the law describing the essential elements of the offense for which extradition is requested." (R. 1, Gov't.'s Crim. Compl. at 19.) But the Polish prosecutor submitted excerpts from Poland's criminal and fiscal penal codes listing elements of the charged offenses. (Id. at 84-85.) Blacha does not explain why more is required. (See R. 33, Gov't.'s Supp. Reply at 7.)

Blacha also suggests that extradition should be denied because Poland has not "actually filed formal charges" against him. (R. 16, Blacha's Resp. at 7.) Blacha does not support his argument with citations to the Extradition Treaty, and the court finds no provision requiring such a result. *See In re Extradition of Handanović*, 829

F. Supp. 2d 979, 986 (D. Or. 2011) (noting in context of treaty with Republic of Bosnia and Herzegovina and United States that treaty did "not make extradition conditional on the filing of formal charges"). In any event, Poland transmitted evidence explaining that it "pressed" charges against Blacha "[i]n the course of the proceedings registered under file number VI Ds 1/13/Sp," but "[t]he charges were not officially announced due to the fact that the suspect was not staying at his official registered address and had been fleeing from justice." (R. 15, Govt.'s Ex. 1 at 68.)

In his supplemental response, Blacha challenges the credibility of purported accomplice and witness statements cited by Polish authorities in seeking extradition for the crimes charged. (R. 29, Blacha's Supp. Resp. at 4-5.) Relying on United States law relating to the sufficiency of affidavits for warrants, Blacha contends that the credibility of a witness is "crucial" to the probable cause determination and challenges the government's failure to "provide any information about any of the witnesses' credibility"—or even the underlying statements themselves. (Id. (internal quotations omitted).) For support he cites *In re Mazur*, No. 06 MC 295, 2007 WL 2122401, *27 (N.D. Ill. July 20, 2007), an extradition matter in which the court found probable cause lacking where "the evidence presented by the government . . . on close scrutiny, turned out to be so internally inconsistent, so patently unreliable, that it obliterated, all on its own, any semblance of probable cause." In *Mazur* the government had submitted only abstracts of witness statements, which included "so many inconsistencies" that the court questioned how the government could have "thought they could give rise to probable cause." *Id.* at *21. Furthermore, one witness who

provided 14 statements admitted he "lied under oath . . . essentially made up the connection [between the accused and the victim of a crime], or . . . [was] providing information in exchange for a reduced sentence in the murder case for which he was being detained." *Id.* at \*22.

The same is not true here. In the extradition context, courts may rely on accomplice testimony to support a probable cause finding, *see Bovio*, 989 F.2d at 259; *Eain*, 641 F.2d at 510, provided "there is evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the guilt of the accused," *Rodriguez Ortiz*, 444 F. Supp. 2d at 884 (citation omitted). Here, the Polish prosecutor's summary of witness statements satisfies this standard. While Blacha is correct that Polish officials did not provide the underlying testimony, the statements were made in the context of 2013 and 2014 hearings and 2015 trial testimony in the Siedlce district court. (R. 1, Crim. Compl. at 62-74.) And Polish authorities showed how documentary evidence supports those statements. (Id. at 62-63, 65-66.) As such, this court is satisfied that the evidence provided by Polish officials has the requisite indicia of reliability to support probable cause. *Rodriguez Ortiz*, 444 F. Supp. 2d at 884.

Blacha tries to discredit the reliability of the evidence by alleging a conflict of interest between the presiding district court judge and district prosecutor, both of whom worked in Siedlce, Poland during the same time. (R. 29, Blacha's Supp. Resp. at 6-7.) In short, Blacha contends that on June 9, 2015, Judge Wardak authorized Blacha's temporary detention, even though she is not a criminal judge. (Id.) Blacha

has reason to believe that Judge Wardak is married to Jaroslaw Wardak, who in June 2015 was a district prosecutor in Siedlce. As such, Blacha "suggests potential ulterior motives for the bringing of charges" against him, including that Judge Wardak may have been trying to boost her husband's career. For support Blacha points to the government's evidence in support of extradition, which shows that in June 2015 a district prosecutor in Siedlce "decided to remove, from the files of the investigation . . . the materials concerning Marek Blacha" so that the circuit prosecutor's office could continue the investigation.[4] (Id. (citing R. 15, Govt.'s Ex. 1 at 68).) Shortly thereafter, Jaroslaw Wardak was promoted to the circuit prosecutor's office. (Id.)

Because the Extradition Treaty prevents extradition where the offense is one of "a political character" or the request was "politically motivated," as Blacha suggests is the case here, he asks the court to deny certification of extradition. (Id. at 6.) But Blacha has not submitted any evidence showing that Jaroslaw Wardak was the district prosecutor who sought Blacha's detention or any other evidence to support his suspicion. Moreover, on August 6, 2015, circuit prosecutor Tomasz Giza decided to order the detention of Blacha by means of an "All Points Bulletin," adding at least one layer of impartiality to the request that Blacha be detained. (See R. 15, Govt.'s Ex. 1 at 68.)

Blacha's conflict-of-interest allegations are concerning. He has been detained in the United States for nearly a year in connection with the extradition request,

---

[4] Blacha represents that his Polish counsel has been unable to obtain his complete case file from the Polish prosecutor. (R. 29, Blacha's Supp. Resp. at 10-11.)

while his Polish counsel has been investigating the charges. Nevertheless, the government is correct that allegations of improper political motivations and conflicts of interest are reserved for the Secretary of State. The Seventh Circuit directs courts in this circuit to limit their review to determining whether the government has established the legal requirements for certification of extradition. *Venckiene*, 929 F.3d at 848. Here, the government has done so.

## D. Statutes of Limitations

Finally, Blacha asserts that the Polish crimes with which he has been charged are "barred by lapse of time" and therefore fall outside the scope of the Extradition Treaty. (R. 16, Blacha's Resp. at 6.) Blacha bases this assertion on statements in the extradition request that the alleged scheme occurred between July 2009 and April 2010 and that despite the Polish district prosecutor's June 8, 2015 request for the temporary detention of Blacha, "charges were not officially announced." (Id. at 4, 6 (citing R. 1, Govt.'s Crim. Compl. at 62-64, 67-74).) Because more than 10 years have passed since Blacha engaged in the crimes alleged, he argues that the applicable statutes of limitations have expired. (Id. at 6.)

As the government states in its reply, the deputy circuit prosecutor in Siedlce explained why Poland's statutes of limitations have not lapsed here. (R. 18, Govt.'s Reply at 3.) He submitted supplementary information describing how Poland calculates limitations periods under its criminal and fiscal penal codes and attached the applicable regulations for support. (R. 1, Crim. Compl. at 98-104.) Based on the information provided by the deputy circuit prosecutor for Count I, the initial

limitation period runs from April 28, 2010, the last date Blacha engaged in the criminal conduct alleged. (Id. at 99 (noting that for crimes "comprised of multiple acts, persistent, as well of continuous nature," the limitation period runs from "last moment of action of the offender" under Polish law).) The crime alleged in Count I carries "a penalty of imprisonment exceeding 3 years," meaning prosecution may occur only until "the lapse of 10 years," or until April 28, 2020. (Id. (citing Articles 101, 102, 258 of Criminal Code of Poland).) Where proceedings are initiated against a suspect within the initial limitation period, however, the period is extended by 10 years, or until April 28, 2030. (Id. (citing Article 102 of Criminal Code of Poland).) Having reviewed the criminal provisions cited, the court finds that the limitation period applying to Count I has not lapsed.

As to Count II, the deputy circuit prosecutor indicated that for a fiscal offense, "the limitation period runs from the end of the year in which the payment deadline for this receivable expired, that is December 31, 2010." (Id. at 85, 100, 102 (citing Article 44, Section3 of Fiscal Criminal Code of Poland).) According to him, the initial limitation period expired on December 31, 2020, "taking into account the most severe punishment for the individual offenses" because Article 87, Section 2 of the Fiscal Criminal Code does not specify a maximum period of imprisonment.[5] (Id. (citing Article 44, Section 1 of Fiscal Criminal Code of Poland (noting that statute of limitations expires in five years if fiscal offense is punishable by a penalty of

---

[5] Where the Fiscal Criminal Code does not set a maximum penalty, Article 27, Section 1 imposes a five-year penalty. (R. 41, Govt.'s Mot. to Amend at 4 & n.2.)

imprisonment for up to three years and in 10 years if punishable for more than three years)).)  He explained that because Poland initiated proceedings before that time, the 10-year limitation period set forth in Article 44 of the Fiscal Penal Code is extended by another 10 years, or until December 31, 2030.  (Id. (citing Article 44, Section 5 of Fiscal Criminal Code of Poland).)

The court initially agreed with Blacha that the documents submitted by the government did not appear to support the deputy circuit prosecutor's explanation as to why the statute of limitations had not expired as to Count II.  (See R. 40, Mem. Op. and Order at 18-20.)  But in its motion to amend the government traced the path of reasoning supporting its argument, including by noting an error in the English translation of a document submitted to the court and correcting a misstatement in its opening brief.  (R. 41, Govt.'s Mot. to Amend at 3-6 & nn.2-4.)  As such, the government has sufficiently shown that the applicable statute of limitations has not expired as to Count II.

Blacha argues that the government's explanation still lacks merit because for Count II, he is wanted under Article 87, Section 2 and in relation to Article 90, Sections 1-2, and the latter statute sets a maximum period of imprisonment of three years.  (R. 43, Blacha's Resp. at 2-3 (citing R. 1, Crim. Compl. at 1).)  Although Blacha offers different calculations based on his argument that the statutes of limitations have expired, (id; see also R. 16, Blacha's Resp. at 5-6 (citing Article 44 of Extradition Treaty for support), this court must defer to a foreign nation's interpretation of its own laws.  *See In re Assarsson*, 635 F.2d 1237, 1244 (7th Cir. 1980); *see also Noeller*,

922 F.3d at 805 ("[E]xtradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law.").  Accordingly, this court concludes that the applicable statutes of limitations do not bar extradition for Count I or Count II.

## Conclusion

For the foregoing reasons the court certifies Blacha's extradition to the United States Secretary of State for Counts I and II.  A certified copy of this Amended Memorandum Opinion and Order and Certification of Extradition, together with all formal extradition documents received into evidence, a certified copy of all testimony and evidence taken at the extradition hearing, and a copy of all memoranda of law filed on the issue of extradition, and this and all other orders of the court, shall be forwarded to the Secretary of State by the Clerk of the United States District Court for the Northern District of Illinois.  Blacha shall remain in the custody of the United States Marshal's Service pending final disposition of this matter by the Secretary of State.

ENTER:

_____
Young B. Kim
United States Magistrate Judge